IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| DAPHNE POITEVIN-VELAZQUEZ, JOSE REINALDO MARTINEZ-RAMOS, and the conjugal partnership constituted by them | |
| Plaintiffs | CIVIL 09-1703CCC |
| vs | |
| A.T. CROSS COMPANY, DAVID FERREIRA and LIANNE PORTUONDO | |
| Defendants | |

**OPINION AND ORDER**

        This action for employment discrimination is now before us on defendants A.T. Cross Company (Cross) and Lianne Portuondo's Motions for Summary Judgment (**docket entries 58 and 60**, respectively). Defendant David Ferreira joined the motions (docket entry 61). Plaintiffs opposed(docket entries 72, 73 and 74) and Portuondo replied (docket entry 83).  Plaintiff Poitevin's remaining claims[1] include those filed against the company with which she formerly worked, A.T. Cross Company, pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., and national origin discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e (Title VII) and, as to all defendants, her Law 100 claim, and her husband José Reinaldo Martínez-Ramos' and their conjugal partnership's claims under Article 1802 of the Civil Code of Puerto Rico.[2]

**I.      PLEADING/SUMMARY JUDGMENT STANDARDS**

        Under Fed. R. Cv. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While the rule does not require a detailed   factual   allegation,   it   does   demand   more   than   an   unadorned,   "the

---

[1]Poitevin's claims against Ferreira and Portuondo under the ADEA, Title VII, and Law 80, her own Articles 1802-1803 and Law 115 claims against all defendants were DISMISSED.  See, Partial Judgment of November 12, 2010 (docket entry 69).

[2]Although Puerto Rico Law 80 is invoked in the jurisdictional paragraph of the complaint, Poitevin has not averred a cause of action under this law.

CIVIL 09-1703CCC                                    2

defendant-unlawfully-harmed -me "accusation.   Iqbal v. Ashcroft, 129 S.Ct. 1937, 1949 (2009).  A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Threadbare recitals of those elements, supported by mere conclusory statements, does not suffice. Twombly, *supra*, at 555.

Summary Judgment "is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to a judgment as a matter of law." Rule 56 of the Federal Rules of Civil Procedure; Sands v. Ridefilm Corp., 212 F.3d. 657, 660-61 (1st Cir. 2000); Barreto-Rivera v. Medina Vargas, 168 F.3d. 42, 45 (1st Cir. 1999).  The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record.  DeNovellis v. Shalala,124 F.3d. 298, 306 (1st Cir. 1997).  The nonmoving party must establish the existence of at least one relevant  and material fact in dispute to defeat such a motion.  Brennan v. Hendrigan, 888 F.2d 129 (1st Cir. 1989).

The purpose of a summary judgment motion is to "pierce the boilerplate of the pleadings and assay the parties proof in order to determine whether trial is actually required."  Wynne v. Tufts University, 976 F.2d 791, 794 (1st Cir. 1992).  The Court must look at the record in the light most favorable to the non-moving party; however the Court need  not rely on unsubstantiated allegations.  To defeat a motion for summary judgment, evidence offered by non-movant "must be significantly probative of specific facts." Prescott v. Higgins, 538 F.3d. 32, 40 (1st Cir. 2008); Pérez v. Volvo Car Corp., 247 F.3d. 303, 317 (1st Cir. 2001).  We may ignore "conclusory allegations, improbable inferences and unsupported speculation.  Prescott, at 40.

A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation. The non-moving party may not rest on mere allegations or denials of his pleading but must"come forward with 'specific facts showing that there is a genuine issue for trial.' [A] genuine issue of material fact exists if: (1)

CIVIL 09-1703CCC                    3

there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." RSBI Aerospace, Inc. v. Affiliated FM Ins. Co., 49 F.3d 399, 401 (8th Cir. 1995).

That is, the non-moving party may only overcome the motion with evidence sufficient to raise a genuine issue of fact that is both relevant and material.  See,  Daury v. Smith, 842 F.2d 9, 11 (1st Cir. 1988); Cruz v. Crowley Towing, 807 F.2d 1084 (1st Cir. 1986).  That is, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion [. . .]." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

On issues where the nonmoving party bears the ultimate burden of proof at trial, he may not defeat a motion for summary judgment by relying on evidence that is "merely colorable" or "not significantly probative". Rather, the nonmovant  must present definite, competent evidence to rebut the motion.  Pagano v. Frank, 983 F.2d 343, 347 (1st Cir. 1993), citing Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st  Cir. 1991). Summary judgment is appropriate even when elusive concepts like motive or intent are in play if the non-moving party  rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.  Feliciano v. El Conquistador, 218 F.3d 1 (1st Cir. 2000); Medina Muñoz v. R.J. Reynold Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Therefore, the nonmoving party's failure to advance evidence establishing the essential elements of the cause of action, and for which they have the burden of proof, warrants the dismissal of the case through summary judgment. Celotex v. Catrett, 477 U.S. 37 (1986).

Many of Poitevin's responses to defendants' statement of uncontested material facts are merely denied, or followed by a sentence, or a variation of "Exhibit (5) is a self-serving statement made by co-defendant Portuondo, after conclusion of discovery . . .," with no supporting evidence to refute the content. Local Rule 56(c) requires "a party opposing a motion for summary judgment to accept, deny, or qualify each entry in the movant's statement of material facts paragraph by paragraph and **to support any denials,**

CIVIL 09-1703CCC                              4

**qualifications, or new assertions by particularized citations to the record.**" <u>Cabán Hernández v. Philip Morris USA, Inc.</u>, 486 F.3d 1, 6-7 (1st Cir. 2007) (our emphasis).  If the party opposing summary judgment fails to comply with Local Rule 56(c), "the rule permits the district court to treat the moving party's statement of facts as uncontested." <u>Alsina-Ortiz v. Laboy</u>, 400 F.3d 77, 80 (1st Cir. 2005).

The purpose of this "anti-ferret rule" is to require the parties to focus the district court's attention on what is, and what is not, genuinely controverted.  <u>Id.</u>, <u>see</u> <u>also</u> <u>Cabán Hernández</u>, *supra*, at 7. Otherwise, the parties would improperly shift the burden of organizing the evidence presented in a given case to the district court. <u>Id.</u>, at 8; <u>Alsina-Ortiz</u>, *supra*, at 80.  Local Rule 56 is intended to prevent parties from shifting to the district court the burden of sifting through the inevitable mountain of information generated by discovery in search of relevant material.  <u>Ríos Jiménez v. J. Principi</u>, 520 F.3d. 31, 38 (1st Cir. 2008). Given Local Rule 56(c)'s important purpose, this Court has repeatedly upheld its enforcement, stating that litigants ignore it "at their peril.  <u>Torres-Rosado v. Rotger-Sabat,</u> 335 F.3d 1, 4 (1st Cir. 2003).  Local Rule 56(c) requires "a party opposing a motion for summary judgment to accept, deny, or qualify each entry in the movant's statement of material facts paragraph by paragraph and to support any denials, qualifications, or new assertions by particularized citations to the record." <u>Cabán Hernández v. Philip Morris USA, Inc.,</u> 486 F.3d 1, 6-7 (1st Cir. 2007).

The Court held that submitting an "alternate statement of facts," rather than admitting, denying, or qualifying a defendant's assertions of fact "paragraph by paragraph as required by Local Rule 56(c)," justifies the issuance of a "deeming order," which characterizes defendant's assertions of fact as uncontested.  <u>Cabán Hernández</u>, *supra*. Accordingly, the following Uncontested Material Facts, submitted by Cross and denied without evidentiary citations to the record by plaintiff, are deemed ADMITTED: Statement numbers 12, 14-16, 26, 31, 39-49, 51-55, and 58.

CIVIL 09-1703CCC                                        5

## II.   FACTUAL ALLEGATIONS

In their motions for summary judgment defendants submit that Poitevin lacks claims under the federal laws invoked because she was not Cross' employee. They further contend that she did not suffer a hostile work environment, the claim for which they argue that, in any event, is time-barred. They also state that she  lacks a claim for national origin, age discrimination. or for retaliation under Title VII and the ADEA, because the termination of her employment was based on good business reasons. They additionally argue that her husband and conjugal partnership's cause of action is time-barred. Because the issue of whether Poitevin was an independent contractor or an employee of defendant Cross is dispositive of her federal claims, we limit our discussion and address only this issue.

Eliminating all conclusory averments of law and fact, and speculation, the relevant, material facts as pled in the complaint  are as follows:

Poitevin, began working directly with Cross in 2001 as a merchandiser, when the Company took over the operations of its Puerto Rico distributor Hawayek Freeport, with which she had been an independent contractor/ non-exclusive merchandiser.[3]   In March, 2007, David Ferreira, Cross' Traveling Retail Manager for Latin America, who worked out of Miami, Florida, became her supervisor.  Id., ¶ 17.

Plaintiff then narrates the fact of multiple incidents occurring after his appointment that she alleges demonstrate a hostile work environment based on national origin and age discrimination  See, e.g.  ¶¶ 18, 19, 22, 23, 24, 26, 27, 28, 30, 32 and 34.  Plaintiff's first cause of action against Cross is for national origin discrimination and termination of her work relationship with Cross in retaliation for complaining about said discrimination. Poitevin's second cause of action against Cross is based on age discrimination.  She states that she

_____

[3]Plaintiff erroneously states in her complaint, at ¶¶ 12 and 15 that she worked for Cross since 1997 and became a sales representative in 1999.  The Pointevin/Hawayek contract, defendants' exhibit 1, at ¶ 5b reflects that Poitevin actually worked as an independent contractor/ non-exclusive merchandiser with Hawayek Freeport, Cross's distributor in Puerto Rico from 1999 through part of 2001.  Cross did not take over the Puerto Rico operations until some time in 2001.  Plaintiff signed an independent contractor/merchandiser letter contract  directly with Cross on May 1, 2001.  Defendant's exhibit 3.

CIVIL 09-1703CCC                                6

is 57 years old, that her job performance met defendant's requirements and expectations and, notwithstanding her satisfactory job performance, she was dismissed and replaced by a younger person.  Id., ¶¶ 51, 52, 53, 54 and 56.  The third and fourth causes action are filed pursuant to Puerto Rico Laws 100 and 115, 29 L.P.R.A. §§ 146 and 194, et seq., respectively, for unlawful discrimination employment practices.  Remaining of the fifth claim is Poitevin's husband and conjugal partnership's subsidiary tort claim arising from defendants' alleged actions against Poitevin.

Plaintiff's grounds for believing herself to be a Cross employee are summed up at page 107 of her deposition (74-2):

> A.    Because I had a time schedule, I would work forty hours, I had a time card, I had a schedule. I had access to confidential information regarding clients, as to credit. I had access to all the accounts, I had a direct deposit in my account, they would pay for my vacations, I would use the whole Fed-Ex system at A.T. Cross Puerto Rico.  I appear in the Cross's web page as Cross's employee, and as far as I'm concerned, because of the relationship, my performance and because Lianne Portuondo told me so.
> . . . .
> Q.    What did Lianne tell you?
> A.    That I was starting to have a full and direct job with them, with the company.

## III.   ANALYSIS

Supplementing the complaint with the exhibits supporting the motions and the uncontested material facts, we complete the events as follows:

Poitevin worked pursuant to a Merchandiser Contract with Hawayek Freeport, that she and José M. Hawayek, the distributor in Puerto Rico for Cross, signed on September 7, 1999.  Defendant' Ex. 1. The contract specifically stated, at ¶5b, "The relationship hereby established does not constitute that of employer or employee, partners or joint ventures, but that of independent contractor. After Cross ended its contract with Hawayek and took over the operation of the Puerto Rico market, it entered into a non-exclusive merchandiser contract with Poitevin. Defendants' Exhibit 3, the May 1, 2001 letter/contract sent by

CIVIL 09-1703CCC                                        7

Portuondo, and accepted and signed by plaintiff, states in the introduction that Cross confirms her appointment as a non-exclusive merchandiser in Puerto Rico under the terms and conditions, set forth below, among which are the following:

1.      Poitevin acknowledges that Cross has developed the good name, good will, and it products' acceptance in the United States, Puerto Rico, the Virgin Islands, Caribbean and other countries and it will continue to have, at its effective charge, the distribution, promotion and marketing of its products in Puerto Rico.

2.      Poitevin acknowledges that it is not Cross's intention to grant her the distribution, promotion and marketing of the products in Puerto Rico.

3.      The contract would expire on December 31, 2001 without notice, and could be renewed for one year terms by written agreement, and terminated by either party, with or without cause, upon 30 days notice.

5.      It is stated in this paragraph that Poitevin is not a sales representative for Cross, she is not authorized to accept purchase orders or make any representations on Cross's behalf and she is not entitled to receive any sale commissions **because she is a merchandiser, not a sales representative**.

6.      Paragraph 6 defines the relationship between Poitevin and Cross:

> The relationship between you and CROSS will be one of an independent contractor. You have no right or authority, whether express or implied, to assume or create any obligation on behalf of CROSS. **You will not be deemed an employee, agent or representative of CROSS. You further acknowledge that the intention when entering into this Agreement was that you would not be a distributor, sales representative, agent or employee** for CROSS.

(Our emphasis)

From the clear and unambiguous terms of the initial written agreement between Cross and Poitevin, she was an independent contractor/merchandiser – not "a distributor, sales representative, agent or employee for CROSS." Id. It is undisputed that the contract was not renewed in writing, and that the initial contract letter was followed by verbal

CIVIL 09-1703CCC                              8

agreements. The question before us is whether those agreements continued the independent contractor relationship or established an employment relationship.

The Court of Appeals for the First Circuit has applied the "common law agency test" in cases arising under federal anti-discrimination statutes, such as the Title VII and the Age Discrimination in Employment Act (ADEA), which contain containing the same definition of "employee." See, Alberty-Vélez v. Corporación de Puerto Rico para la Difusión Pública, 361 F.3d. 1, 6 (1st Cir. 2004) and cases cited therein. Under the common law test, a court must consider:

> the hiring party's right to control the manner and means by which the product is accomplished. Among other factors relevant to this inquiry are the skills required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the extent of the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; and the tax treatment of the hired party.

Id., at 7. The Court went on to say that the test provides no shorthand formula or magic phrase that can be applied to find the answer, all of the incidents of the relationship must be assessed and weighed with no one factor being decisive. Where there are no disputed issues of material fact concerning the employment status, a court may decide the employee/ independent contractor question as a matter of law if the factors point so favorably in one direction that a fact finder could not reasonable reach the opposite conclusion. Id.

In the action before us, not all of the criteria are applicable, there are some criteria about which we have no information, and other criteria raised by plaintiff herself, which are relevant and indicative of her work status, but not included in the list.

We first present undisputed facts bearing on the determination of Poitevin's status, as taken from those portions of her own statement of proposed uncontested material facts, (docket entry 74), with which defendants have no dispute:

5.      Poitevin worked from home; She was paid directly by Cross.

      10.    Poitevin was paid by the hour.

      11.    Poitevin had more responsibilities on January 2nd, 2002 with Cross.

      13.    It was agreed that Poitevin would continue rendering services to Cross as she had been doing but by then she had additional duties . . . .

      16.    Poitevin entered into a verbal agreement with Cross.

      22.    Poitevin was paid for all the hours that she worked and rendered a report for the hours worked during the month.  She was paid $10.50/hr. . . . It was increased to $14.50/hr.

      23.    Poitevin entered into a verbal contract with Cross pursuant to which her relationship with cross Continued.

## A.    **The Verbal Contracts**

It is undisputed that plaintiff's initial letter contract was unequivocally one to work as an independent contractor/merchandiser. Although Poitevin denies that the contract was renewed at the end of 2001, her deposition testimony reflects that, thereafter, she worked under verbal contracts.[4] See, Poitevin deposition, at pp. 58-60 (58-3, 74-1 )[5].  Under the first verbal agreement she relates that she was given all the client files to follow up, additional duties, and later increase in her hourly pay.  Poitevin stated, "everything continued to be normal, everything was good, except for those changes."  Id.  In her explanation of the verbal agreements of how the employment relationship changed, plaintiff describes increases in duties and responsibilities; she does not state that under the verbal agreements she became an employee, was added to the employee rolls, was given equipment or now had fringe benefits such as sick leave or company insurance.  In another exchange during her deposition, regarding changes in her relationship with Cross after the only written contract expired, at page 12 (58-5), with Attorney Cruz leading as follows:

---

[4] Poitevin's Uncontested material facts (docket entry 74) numbers 23, 24 and 25 does not give any dates on which these oral contracts were entered.  It is unclear from the context whether she is referring to a new contract or one that she has previously mentioned.  Therefore, the total number of such contracts is unknown.

[5] Numbers in parentheses (58-3, 74-1) refer to the docket entries and attachment numbers from which the pages cited are taken.

CIVIL 09-1703CCC                              10

>        Q.    Let me rephrase the question. If I have [understood] you correctly, your position is that the relationship with Cross grew after December 2001 into a relationship where you understood you were Cross representative in Puerto Rico.
>
>        A.    Yes.
>
>        Q.    Did it change in any other way?
>
>        A.    My responsibilities.
>
>        Q.    Besides your responsibilities, did it change in any other way?
>
>        A.    No, it continued to be the same, I continued to work.

As stated by Debra-Lee Hagopian, Cross' Director of Human Resources, in her Statement under Penalty of Perjury, Defendants' Ex. 9 (59-2), ¶18:

>        At the time of hiring new employees, Cross requires them to sign an "Employment at Will Contract", an acknowledgment as to the receipt of Cross' employment policies, which include the Equal Employment Opportunity Policy, and a statement of compliance with Cross' Code of Ethics and Business Conduct, among other employee forms and documents. None of these documents were signed by Mrs. Daphne Poitevin because she was not Cross' employee.

Moreover, with regard to the nature of her work relationship as an independent contractor, as opposed to an open-ended or permanent employer/employee relationship, Poitevin states in her Charge of Discrimination before the Puerto Rico Anti-Discrimination Unit, plaintiff's Ex. 5, "Instead, they cancelled my contract effective November 25, 2008."

**B.    Sales Representative -"Employee" Role**

Plaintiff  claims a change in work status to that of Cross' employee based on the characterization of her position, from 2002 on, as Cross' representative in Puerto Rico. Plaintiff's perception is based on her increased  duties and responsibilities  after her written contract expired. She also asserts that Portuondo referred to her as Cross' representative in Puerto Rico. Plaintiff's deposition, at  51-55. (58-3).  Ana María López, who was hired by Cross in June, 2008 and became plaintiff's immediate supervisor, states In her deposition testimony,  at 62 and 64, that  the clients in Puerto Rico, and the persons at Cross with

whom López worked, knew, or stated to her, that Poitevin was a sales representative for Cross in Puerto Rico.  (Plaintiff's Ex. 3).

The matter of plaintiff's classification as a Cross sales representative, however, is not a question of material fact bearing on the issue of her work relationship status. That an individual is a sales representative is in no way determinative of an employer/employee relationship as opposed to one based on an independent contractor relationship, because sales representatives may operate under either kind of relationship.  See, e.g., Ernster v. Luxco, Inc., 596 F.3d. 1000, 1007 (8th Cir. 2010) (Marketing representative for liquor brokerage company was an independent contractor and not an employee eligible for ADEA protection); Dykes v. DePuy, Inc., 140 F.3d. 31, 34 (1st Cir. 1998) (Owner of company acting as a manufacturer's sales representative in the region was an independent contractor, not an employee of the manufacturer.); Nieves v. Universal Solar Products, 2009 WL 481274 (D. Puerto Rico 2009)(Whether plaintiff/sales representative was an independent contractor or was actually an employee was a question of fact that could not be resolved on summary judgment.).

In fact, Puerto Rico's Sales Representatives Act, Law 21 of December 5, 1009, 10 L.P.R.A. § 279 et seq. provides protection for independent contractors working as exclusive sales representatives from unjust termination of the contractual relationship by the manufacturer or entity that they represent.  For purposes of the law, Section 279(a) defines "sales representative" as, "an independent entrepreneur who establishes a sales representation contract of an exclusive nature, with a principal or grantor, and who is assigned a specific territory or market, within the Commonwealth of Puerto Rico.

Similarly, in response to Cross's uncontested fact number 26 that a letter written by Cross to assist with her loan application did not change or modify the parties contractual relationship (58-1), Poitevin denies the statement as self-serving and, without providing the letter itself, or any other evidence, adds, "The letter provided to the bank was clearly prepared to show that, indeed, Poitevin was an employee of Cross."(docket entry 73, at 4).

Contrary to plaintiff's interpretation, the language of the letter reflects only that she has a work relationship, the kind of which is not identified: "I hereby state that Mrs. Daphne Poitevin, . . **works with our company** . . . ." (Docket entry 87-1)  (our emphasis).  It does not state that she is "an employee" or "is employed by."

## C.    Ownership of Equipment and Tools

Poitevin acknowledged that, aside from promotional and exhibitional items, the only equipment provided by Cross were an engraving machine for use on its products, and a laptop computer that did not work very well and that she did not use for long. That is, all of the equipment she used – the fax machine, telephone, cellular telephone, computer, camera and any other tools or equipment in her office were her own property. Plaintiff's deposition at 23-25 (58-5 ). Poitevin affirmed this statement  at page 1 of her September 7, 2008  letter to Portuondo (86-1 translated at 59-15), when she states, " I have not received benefits, nor training from the company ever, **nor computers, photographic cameras, really no equipment, nothing, I have to provide myself with everything and I did it."** (Our emphasis). The fact that a worker provides his or her own tools generally indicates independent contractor status. Peno Trucking, Inc. v. Commissioner of Internal Revenue, 296 Fed. Appx. 449, 458 (6th Cir. 2008).[6]

## D.    Treatment of Income for Tax Purposes

With regard to plaintiff's treatment for income tax purposes in evaluating an individual's work status, tax forms and tax returns are essential in determining such status. See, e.g. Estate of Suskovich v. Anthem Health Plans of Virginia, 553 F.3d. 559, 568 (7th Cir. 2009).  Cross' uncontested fact number 8 --"Poitevin recognized that she was a contractor when she acted as one for tax purposes.  Poitevin benefitted from her status as a contractor and deducted all the business expenses she allegedly incurred as Cross'

---

[6]Poitevin complained in her Anti-Discrimination Unit Charge, Ex.  5, that when Cross **hired** Ana López, "[s]he was given all the help I had been asking for, for so long and had never gotten, such as a fax, digital camera, computer, expenses, and cell phone."

contractor, instead of limiting herself to the $1,1500.00 maximum employee deduction allowed by the Puerto Rico Income tax provisions to employees." – was denied by the plaintiff in her response, without a citation to any supporting evidence. With her denial, however, she did state, "Poitevin's manner of filing her income taxes complied with state law." Therefore, we examine plaintiff's tax returns and form, accepting that she has filed the applicable forms with the correct categories for her deductions.

Except for 2004[7], when she did not file a tax return, plaintiff filed her annual Puerto Rico income tax returns, not with a Form W-2, which reports wage or salary income of employees, but with a Form 1099 which reports miscellaneous/self-employment income. Each Form 1099, from 2001 through 2008, reflects Poitevin's income from Cross as "**Nonemployee** compensation." (Our emphasis).  The forms further reflect that no state or federal income taxes were withheld.  Furthermore, as part of her income tax returns, plaintiff included the "Schedule M Individual," claiming operating expense and other costs.  For example, on her 2003 tax return, she claimed expenses of $800.00 for repairs, $4,500.00 for motor vehicle expenses, $4,800.00 for utilities, $1,800.00 for travel expenses and $800.00 for professional services, for a total of $12,400.00 in business related expenses. Similar expenses were claimed in other years, for example, $7,050.00 in 2005, $16,700.00 in 2006, and $19,400.00 in 2008. All of these amounts are well above the $1,500.00 annual allowance for employee deductions for business related expenses allowed on the Puerto Rico income tax return.

Additionally, neither Poitevin's income tax returns nor the 1099 forms reflect any deductions by Cross for federal or Puerto Rico income tax, or for social security taxes, as required under the Federal Insurance Contributions Act, 26 U.S.C. § 3101 et seq., for

---

[7] During 2004 Poitevin states that she did not maintain a direct work relationship with Cross and, therefore, was not paid by the company.  Instead, she worked with her son, Krystian López, who had an independent contract with Cross, and who was also paid non-employee compensation reported on a Form 1099.  That is, the orders were in her name but her son submitted the claims for payment to Cross and payment was made to him.  Poitevin deposition at 59-60 (74-1, 58-3).

remuneration from employment.  Peno Trucking, Inc., *supra*, at 454.  That is, for income tax purposes, plaintiff was not a Cross employee: defendant paid her non employee income as reflected on the 1099 forms, not W-2 forms. Poitevin affirmed her non-employee status vis a vis her tax returns by claiming as business expenses on the Schedule Ms, thousands of dollars for maintaining an office in her home, utilities vehicle and travel expenses and other costs that far exceeded the legal employee deduction of $1,500.00 year for business-related expenses.

**E.     Email Address, Website Access**

        While Poitevin claims to have had an employee number, user I.D., password and email address as a Cross employee, her own evidence refutes this point.   Plaintiff's Exhibit 4, is a Gmail "MyCrossBiz.com User ID/Password Reminder" originally sent by Cross to Poitevin on March 16, 2006.    MYCROSSBIZ.COM, however, is not the Cross website for its **employees**.  The website's Homepage can be used by anyone to access general introductory information about site. With regard to secures areas of the site, it is stated, "**Only authorized distributors and business partners of Cross may access the site**." (our emphasis). It also sets out the procedure by which distributors and business partners can obtain additional user IDs and passwords for **their** employees.  The email reminder to plaintiff contains the message, "Sign in now. It's never been easier **to do business with Cross**!" (Our emphasis).[8]

        We also note that Poitevin's email address on the reminder, "d_poitevin@yahoo. com",  is the same email address that she used to communicate with the defendants and other Cross employees. There is nothing in plaintiff's Yahoo email address that identifies it as having any relationship with the A.T. Cross company.  In contrast, copies of other emails submitted as exhibits reflect that defendants Ferreira and Portuondo, and other Cross

---

[8]Poitevin also contends that she appeared on Cross' web page as an employee, and that Portuondo told her so in 2002, (74, at 6, ¶40), but she has not submitted a copy of the website page or any other evidence to corroborate these self serving statements.

CIVIL 09-1703CCC                         15

employees use individualized email addresses with the Cross' name as the domain name, such as "dferreira@cross.com", and "Rconway@cross.com". Moreover, Poitevin acknowledged that she never had an "@cross.com" email address. (Plaintiff deposition at 13 (58-5).

**F.    <u>Work Hours and Fringe Benefits</u>**

Plaintiff's contracts did not require that she work a specific number of hours on a daily basis; she was able and/or free to work the number of hours she deemed necessary. Plaintiff deposition at 49 (58-3). She would invoice hours that she worked and report them to Portuondo or another Cross employee so that she could be paid for her services. Plaintiff deposition at 75 (58-3).

At pages 118-120 (58-6) of her deposition, Poitevin claims to have been paid for vacations in April or May, 2007 and April and May, 2008. She did not know if she had, or if any document existed in which she was notified of either vacation or sick leave during her relationship with Cross. <u>Id</u>. Also, in response to defendants' uncontested fact number 14, plaintiff refers to her Promoter's Itinerary of April, 2007 as demonstrating that, "[in] April 2007 one week she only worked 8 hours; hence, she was on vacation as stated in her deposition." This statement is patently false, however: the "week" that she claims to have invoiced only eight hours was a single day – Monday, April 30, 2007. Tuesday through Friday of that week were May 1 through 4, 2007, during which Poitevin claims to have worked 32 hours and which appear on her May, 2007 Promoter's Itinerary. If she was paid by Cross for vacation during the month of April, 2007, it was because she reported to Cross that she had been working an average of eight hours every day.

With regard to other purported paid vacation in April and May of 2007 and 2008, a review of plaintiff's Promoter's Itineraries for the months of April and May, 2007 reflect that Poitevin reported that she had been servicing clients throughout the island for 40 hours each of the four weeks and eight hours for the extra day discussed above, or 164 hours worked in April, 2007 and that she did 184 hours of promotional work in May, 2007. In April,

2008, Poitevin claimed to have worked 164 hours and in May, 2008,184 hours.  Plaintiff has submitted no documentation to support her contention of a vacation for which Cross **knowingly** paid.  Rather, the evidence reflects that Poitevin reported to Cross on her Promoter's Itineraries that she had done promotional work for clients, averaging eight hours per day for every weekday during those entire periods when she claims she was on vacation. She did admit that, however, at pages 120-121 of her deposition (58-6), other than the "vacation leave" discussed above, she did not receive any employee benefits from Cross.

        In sum, the uncontroverted evidence reflects that Poitevin worked with A.T. Cross as an independent contractor for their entire relationship, except for the period in 2004 when she was not paid directly by Cross, but, instead, worked with her son Krystian López, who had his own independent contract with the company.  During all her time with Cross, when not working in the field, she worked out of her home office, and, except for an engraving machine for use on Cross products, used her own equipment.  Cross paid her as an independent contractor, making no deductions for state or federal income tax, workman's compensation or social security, and Poitevin paid her income tax as an independent contractor, claiming deductions for all her home office expense– equipment, utilities, and materials– as well as all travel-related and vehicle expenses and repairs on the Schedule M form, rather that the maximum of $1,500.00 allowed to employees on the Schedule I form. She received no fringe benefits such as vacation, sick leave, insurance or an employee discount; she did not have an official Cross email account, using instead an ordinary Yahoo email account.

        Having determined that Poitevin's relationship with Cross was as an independent contractor, we turn to the statutes under which she brings her federal claims: Title VII and the ADEA. Title VII defines an "employee" as "an individual employed by an employer." 42 U.S.C. § 2000e(f). It is now clear that this definition does not cover independent contractors. Thus, an independent contractor may not maintain a Title VII action against the

CIVIL 09-1703CCC                              17

entity with which she contracts." Alberty-Vélez, *supra*, at 6;  see also Dykes, *supra*, at 37 n.6 (Title VII does not protect independent contractors.). Similarly, the ADEA, which makes it unlawful for an employer to discharge or otherwise discriminate against an individual  with respect to the terms and conditions of employment because of such individual's age, also requires that the individual be in a covered employment relationship; that is, not an independent contractor.  Camacho v. Puerto Rico Ports Authority, 369 F.3d. 570, 573 (1st Cir. 2004); Speen v. Crown Clothing Corp., 102 F.3d. 625, 629 (1st Cir. 1996).

The Court having found that plaintiff's claims do not proceed because she was an independent contractor and not an employee of A.T. Cross Company, defendants A.T. Cross Company (Cross) and Lianne Portuondo's Motions for Summary Judgment (**docket entries 58 and 60**, respectively) are GRANTED and her federal claims are DISMISSED with prejudice. The claims under Puerto Rico law are DISMISSED without prejudice.

SO ORDERED.

At San Juan, Puerto Rico, on August 31, 2011.


S/CARMEN CONSUELO CEREZO
United States District Judge